# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**Elvin-Torres-Estrada,**

    Petitioner,

    v.

**United States of America,**

    Respondent.

Civil No. 17-1373 (PG)[1]

## OPINION AND ORDER

Before the court is Petitioner Elvin-Torres Estrada's ("Petitioner" or "Torres-Estrada") motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255[2] (Dockets No. 7 and No. 9), and the United States' (or the "Government") opposition thereto (Docket No. 25). For the following reasons, the court **DENIES** Petitioner's motion to vacate.

## I. BACKGROUND

On September 28, 2009, a Grand Jury returned a seven-count First Superseding Indictment charging Petitioner and 64 co-defendants of various drug trafficking offenses. See Criminal Case No. 09-173 (PG). On April 15, 2010, a Grand Jury returned an 11-count Second Superseding Indictment charging the same co-defendants of the same or similar offenses. In the Second Superseding Indictment, Torres-Estrada was charged with: (1) conspiracy to distribute large amounts (stated in kilograms) of heroin, cocaine base, cocaine, marijuana, and detectable amounts of Percocet and Xanax within 1,000 feet of a public

---

[1] Related Crims. No. 09-173-5 (PG); 11-045-1 (PG).
[2] Petitioner failed to request leave to file a reply under Local Rule 7(c). Therefore, Petitioner's Reply (actually called Request for Consideration of New U.S. Supreme Court Precedent in Support of 2255) (Docket No. 39) is hereby stricken from the record.

housing project, in violation of 21 U.S.C. §§ 841, 846, and 860 (Count One); (2) three counts of possession with intent to distribute in excess of 1 kilogram of heroin, 50 grams of cocaine base, 5 kilograms of cocaine, and 1,000 kilograms of marijuana, within 1,000 feet of a public housing project, in violation of 21 U.S.C. § 841 (Counts Three, Four, Five and Six); (3) two counts of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), (Counts Seven and Eleven); and (4) narcotics and money laundering forfeiture allegations pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982. See Crim. No. 09-173, Docket No. at 4-45. On February 9, 2011, a Grand Jury returned a one-count Indictment charging Petitioner and three other co-defendants with: (1) conspiracy to import controlled substances into the United States, in violation of 21 U.S.C. §§ 952(a) and 963. See Crim. No. 11-045, Docket No. at 1-3. On March 21, 2011 Torres-Estrada entered a guilty plea as to Count One of the Second Superseding Indictment in Criminal Case No. 09-173 (PG) and Count One of the Indictment in Criminal Case No. 11-045 (PG). See Crim. No. 09-173, Docket No. 1513. On February 12, 2015, Torres-Estrada was sentenced to 288-months of imprisonment as to Count One in Criminal Case No. 09-173, and 120-months of imprisonment as to Count One in Crim. Case No. 11-045, to be served concurrently with each other. See Crim. No. 09-173, Docket No. 3451. Torres-Estrada filed notices of appeal in both cases on February 21, 2015. See Crim. No. 09-173, Docket No. 3459. On April 19, 2016, the Court affirmed the District Court's sentence and dismissed the appeal. See Crim. No. 09-173, Docket No. 3706.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002). Furthermore, "it is firmly settled that issues disposed of on a prior appeal will not be reviewed again by way of such a motion." Dirring v. United States, 370 F.2d 862 (1st Cir. 1967).

### *Ineffective Assistance of Counsel Claims*

The Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to effective legal assistance. Strickland v. Washington, 466 U.S. 669, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, a petitioner moves to vacate his sentence on ineffective assistance of counsel grounds, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

For Petitioner's ineffective assistance of counsel claim to succeed, he must satisfy a two-part test. First, Petitioner needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688). Second, Petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)). Petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 679 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." Strickland, 466 U.S. at 679.

### III. DISCUSSION

On March 17, 2017, Torres-Estrada filed the pending motion to vacate attacking his conviction and sentence. See Docket No. 7. At the underbelly of every argument contained in the motion is the belief that the Government has schemed to deprive Torres-Estrada of his constitutional rights and that he was deprived of effective assistance of counsel.

In regards to claims not presented on appeal, Petitioner has the added burden of proving good cause and actual prejudice with respect to the procedurally defaulted claims. See Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007) (setting forth analysis of claims subject to procedural default doctrine). The First Circuit has held that "[o]ne way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984)." Wider v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Conversely, if Petitioner fails to establish that the procedural default was the result of his attorney's ineffectiveness, then such claims cannot be presented by way of a §

2255 motion. See United States v. Frady, 456 U.S. 152, 165 (1982) (holding that "a collateral challenge may not do service for an appeal").

Furthermore, the court has deemed waived any other argument that is merely mentioned in passing or is hidden behind Petitioner's primary complains as a mere afterthought. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Against this background, the court will address Petitioner's adequately developed claims in turn.

### *A. Government's Scheme/Misconduct to Violate Constitutional Rights*

Petitioner makes several arguments to further his viewpoint that the Government schemed to deprive him of his Fifth Amendment right to due process, Sixth Amendment right to effective assistance of counsel, and Eight Amendment right against cruel and unusual punishments. See Docket No. 7 at 9. Likewise, as part of the alleged scheme, Petitioner argues that the Government intentionally withheld critical Brady/Giglio[3] material that would have been helpful in the plea bargaining process. Id. Petitioner claims that a "[d]ismissal of [the] indictment can be the only just remedy where an accused establishes a pattern of serious prosecutorial misconduct." Docket No. 7 at 17.

---

[3] Giglio v. United States, 405 U.S. 150, 153 (1972) (finding that a reversal of the judgment of conviction is proper when the Government used false testimony to secure a conviction.). Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment").

### *i. Fifth Amendment, Sixth Amendment, and Eight Amendment Claim*

As noted before, Petitioner argues that the Government has schemed to deprive him of his rights of due process, effective assistance of counsel, and protection against cruel and unusual punishment. As explained below, the relevant facts used to buttress his claim are not germane to his conviction or sentence. As such, his request for relief on this ground fails.

The situation that gave rise to this claim has to do with the murder of a correctional officer at the MDC Guaynabo in Puerto Rico. See Docket No. 7 at 5. Torres-Estrada argues that he was falsely accused of using smuggled cell phones to plan the murder. As a result, he was subjected "to degrading, inhumane, and physically harmful treatment by BOP employees…" Id. Not only was he subjected to a cavity search, but he was also subjected to several rounds of X-rays. Both of these methods proved to be ineffective in the search for the smuggled cell phones. But, according to Petitioner, the pattern of misconduct and abuse did not end there. Torres-Estrada alleges that he was placed in solitary confinement for over 26 months precisely so he could then be surrounded by jailhouse informants after he was psychologically weakened in solitary confinement. See Docket No. 7 at 18. Furthermore, Torres-Estrada alleges that he was deprived of his Sixth Amendment right to effective assistance of counsel because he had no access to his attorneys as the Government purposely delayed charges for the murder of the correctional officer as it tried to gather information through informants.[4]

---

[4] Petitioner is referring to the murder of Lieutenant Osvaldo Albarati, for which another individual was charged and convicted after trial by jury.

The problem with Torres-Estrada's claim is that his conditions of confinement are not subject to collateral review under 28 U.S.C. § 2255. To challenge his conditions of confinement, Petitioner has to exhaust administrative remedies, as "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, no court could entertain this specific claim until Petitioner exhausts administrative remedies. Petitioner's motion to vacate is thus denied on this ground.

### *ii. Exploitation of Conflict During Plea Negotiations*

Torres-Estrada argues that (1) the Government encouraged local counsel, Ramon Garcia Garcia ("Mr. Garcia"), to provide legal advice that conflicted with the advice offered by his lead counsels, Edward Sapone ("Mr. Sapone") and Raymond Granger ("Mr. Granger"); (2) the Government secretly encouraged local counsel to represent Petitioner in a way that conflicted with the advice provided by lead counsel; (3) the Government took advantage of the serious conflict erupting between local and lead counsel by negotiating with local counsel instead of lead counsel. See Docket No. 7 at 33. The first two claims were argued in a perfunctory manner and are unsupported, so the court will address the third claim. See Zannino, 895 F.2d at 17 (issues adverted to in a perfunctory manner are deemed waived).

Neither the Federal Rules of Criminal Procedure nor the Local Rules of the District of Puerto Rico make a distinction between *lead* and *local* counsel. Therefore, all counsel appearing in a case are fully accountable to their client and the court regardless of the term used. Petitioner makes reference to a sworn statement from Mr. Granger, which does not

contain any details for the court to conclude that Mr. Garcia had less responsibility than Mr. Granger and Mr. Sapone.[5] As for Petitioner's statement that Mr. Garcia sabotaged lead counsel by engaging in plea negotiations without authorization from lead counsel, the court must note that:

> [A]lthough the term 'local counsel' at one time may have meant less responsibility on the part of attorneys so designated, it is clear to the court, and should be to every lawyer who litigates in this country, that in the last ten years developments in the law have invalidated this prior meaning. The trend is, properly away from the view that some counsel have only limited responsibility and represent a client in court in a limited capacity, or that local counsel is somewhat less the attorney for the client than is lead counsel.

Gould, Inc. v. Mitsui Min. & Smelting Co., 738 F. Supp. 1121, 1125 (N.D. Ohio 1990).

In this court, counsel is counsel regardless of the term used.[6] Therefore, the Government did not violate any norm by engaging in plea negotiations with Mr. Garcia. Petitioner could have proven that he intended Mr. Garcia to have limited responsibility, but he has not. It would be hard for the court to conclude so given that Petitioner discharged his so called "*lead*" counsel and at some point decided to remain with Mr. Garcia as far as his choice of legal representation is concerned. Petitioner needed to at least identify the contractual limitations imposed on Mr. Garcia, but again he did not. The court has no other option but to conclude that Mr. Garcia had the same responsibilities and duties as "lead counsels." Thus, Petitioner's request for habeas relief on this ground is denied. The court will discuss Mr. Garcia's actual performance later on.

---

[5] See Crim. No. 09-173, Docket No. 2864 at 3.
[6] See also Local Civil Rule 83A(f) and Local Criminal Rule 162 (D.P.R. 2009).

### *iii. <u>Brady</u> Claim*

Torres-Estrada contends that the Government failed to disclose "information that was critical to his counsel's ability to engage in effective plea negotiations." Docket No. 7 at 69. This material, Petitioner argues, was necessary for the sentencing phase of his case, thus under the purview of <u>Brady</u>. This information was listed on a letter sent to the Government on February 7, 2014. <u>See</u> Docket No. 7 at 68. Petitioner also claims that the Government failed to reveal sworn statements of witness Maribel Olivo. <u>Id.</u> at 69-70. Upon careful review of the motion and supporting documents, Petitioner's <u>Brady</u> claim is riddled with conclusory statements many of which were already settled. <u>See</u> Crim. No. 09-173, Docket No. 3447. Moreover, Petitioner failed to show how any of the withheld material caused him prejudice.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that the government violates the accused's due process rights whenever it suppresses evidence favorable to the accused, because it is material to determining either guilt or punishment. A true <u>Brady</u> violation has three components, namely, [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-282 (1999). To prove prejudice, Petitioner has to show that there was a "reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." <u>Jackson v. Marshall</u>, 634 F.Supp.2d 146, 160 (D. Mass. 2009) (quoting <u>Strickler</u>, 527 U.S. at 289). The right Petitioner has to discover exculpatory evidence does not require the prosecution to submit its entire file to the Petitioner, <u>see</u> <u>United States v. Agurs</u>, 427 U.S. 97,

109 (1976), nor does it include "the unsupervised authority to search through the [government's] files." <u>Pennsylvania v. Richie</u>, 480 U.S. 39, 59 (1987).

When it comes to Torres-Estrada's enumerated list of supposed <u>Brady</u> material, most, if not all, of the requested evidence was decided by this court. In other words, the list in question, found in the letter dated February 7, 2014, contains the same material requested by Petitioner in his Motion for Release of Brady Material for Sentencing, which was denied. <u>See</u> Crim. No. 09-173 (PG), Docket No. 3337. At any rate, the court finds that Petitioner failed to prove the third element of the alleged violation, i.e., that the withholding of material caused him prejudice. Petitioner must prove that if it were not for the Government's suppression of the sworn testimony, Torres-Estrada would not have pleaded guilty, but instead gone to trial. <u>See</u> <u>Ferrara v. United States</u>, 456 F.3d 278, 291 (1st Cir. 2006). Again, even if the court were to reconsider previously settled issues, Petitioner fails to demonstrate prejudice.

As far as the sworn statement Maribel Olivo is concerned, the court does not find that there was a <u>Brady</u> violation. Assuming, arguendo, that the sworn statement is indeed a favorable piece of evidence, that is not enough to prove that the Government "committed a classic *Brady* violation." <u>See</u> Docket No. 7 at 71. Petitioner must still prove the element of prejudice, which he has not. Nothing in the record suggests that, were it not for the Government's suppression of Olivo's testimony, Torres-Estrada would have proceeded to trial, or absent that disclosure the result of his case would have been different. However, Petitioner seems to presume that the mere withholding of evidence constitutes a <u>Brady</u> violation, which in and of itself requires vacating his conviction and sentence. Petitioner's motions fall woefully short of showing his entitlement to such extraordinary relief. On the

record as it stands, the court concludes that his Brady violation claims lack merit and his motion on those grounds is denied.

### B. *Lafler/Frye*[7] *Claim*

Petitioner claims that (1) Mr. Garcia provided ineffective assistance of counsel during the 'first round' of plea negotiations which led to the more severe plea that Torres-Estrada accepted and that (2) his ineffective assistance of counsel waiver does not apply to Mr. Garcia as it pertains to the plea negotiations. See Docket No. 7 29-43. It has been established by the Supreme Court that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162, 132 S. Ct. 1376, 1384 (2012). We agree with Petitioner that his ineffective assistance of counsel waiver does not extend to Mr. Garcia. Now, even in that case, the court would be hard-pressed to find that Mr. Garcia provided ineffective assistance of counsel during the plea-bargaining process.

For his ineffective assistance claim to succeed, Petitioner must pass the Strickland test in the plea-bargaining context. Torres-Estrada must thus establish two things: (1) that Mr. Garcia's representation fell below an objective standard of reasonableness, and (2) such sub-par representation caused him prejudice. At this stage, the court asks "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59; Lafler, 566 U.S. at 163, 132 S. Ct. at 1384. Petitioner argues that Mr. Garcia's representation fell below an objective standard of reasoning because (1) Mr. Garcia *sabotaged* plea negotiations when it went against "*lead* counsel's" strategy; and (2) Mr.

---

[7] Lafler v. Cooper, 566 U.S. 156, 132 S.Ct. 1376 (2012) and Missouri v. Frye, 566 U.S. 134 (2012).

Garcia gave erroneous advice when he told Petitioner that he "should be facing a low-end sentence of 8-9 years, up to a high-end sentence of 11-12 years, but no more than that." See Docket No. 7 at 35. Torres-Estrada argues that he suffered prejudice because were it not for Mr. Garcia's ineffective assistance, he would have had the benefit of the Government's original plea rather than being "forced" to take the less favorable plea offer that led to his conviction. See id. at 32-33. For the following reasons the court finds that Petitioner has not proven either of the Strickland prongs.

### *i. Objective Standard of Reasonableness*

The Government's original plea offer was of 188 months, or 15 years and 8 months, of imprisonment. See Crim. No. 09-173, Docket No. 2863-2. Petitioner's "lead counsel" devised a strategy and gained authorization from Torres-Estrada to counter-offer 14 years. See Crim. No. 09-173, Docket No. 2865 at 9. Shortly after Petitioner agreed to the counter-offer devised by Mr. Granger and Mr. Sapone, Mr. Garcia met with Torres-Estrada. In this meeting, Mr. Garcia allegedly convinced Torres-Estrada "not [to] authorize a counter-offer of more than 13 years (156 months)." Id. at 8. On or about September 28, 2010, Mr. Sapone and Mr. Granger tried to convince Petitioner that he should re-authorize the 14-year counter-offer. What did Torres-Estrada do? By his own admissions, he authorized a counter-offer of 13 years and 8 months because he "did not feel comfortable changing [his] decision again." Id. at 10. What is more, Torres-Estrada insisted that Mr. Garcia be present during the negotiations even when Mr. Granger and Mr. Sapone advised him to remove Mr. Garcia from negotiations. Id. So, even when notified of Mr. Garcia's actions, Torres-Estrada decided to trust Mr. Garcia and keep him in his dream-team of attorneys.

Based on the circumstances explained up to this point, the court cannot indulge Petitioner's assertion that attorney Garcia intended to sabotage, or was successful in sabotaging his client's plea negotiations with the prosecution. Mr. Garcia was confident that he could negotiate a better deal than the 14-year counter-offer, so he devised a strategy and presented it to Torres-Estrada, who then authorized the counter-offer. Mr. Sapone and Mr. Granger then provided their own input on the viability of Mr. Garcia's offer, which resulted in Torres-Estrada authorizing a 13 years and 8 months counter-offer. If anything, the record here heavily suggests that Petitioner received input from various experienced attorneys and ultimately decided what he wanted to authorize.

That being said, Mr. Garcia's strategy proved to be a sound one, to say the least. At the September 28, 2010 meeting with the Government, Mr. Garcia participated and proposed a deal—for the parties to recommend 13 years and 6 months of imprisonment—, which the Government at the very least heard, but ultimately rejected. Id. At the end of the day, the Government was not obligated to accept any counter-offer. Indeed, prosecutors are not required to offer pleas or enter into negotiations, period. By his own admission, it can be deduced that the root cause of what Petitioner is characterizing as ineffective assistance of counsel is nothing more than infighting between the attorneys caused or allowed by Torres-Estrada himself. After all, even after being informed that Mr. Garcia was affecting his defense strategy, Petitioner decided to trust and remain with Mr. Garcia and discharge Mr. Sapone and Mr. Granger. See Crim. No. 09-173 (PG), Docket No. 1208. Petitioner cannot now rely on his own strategic mistakes to attack his conviction and sentence on ineffective assistance of counsel grounds. Petitioner also forgets that the sentencing judge was never bound by any

plea agreement, more or less favorable, or the would be sentencing recommendations made by either side.

### *ii. Prejudice*

Petitioner argues that he suffered prejudice because Mr. Garcia provided legally uninformed and ineffective advice. Apparently, Mr. Garcia told him that he would be facing a low-end sentence of 8-9 years and a high-end sentence of 11-12 years. See Docket No. 7 at 35. Petitioner had to elaborate more on this assertion instead of presuming that he received legally uninformed advice. But for argument's sake, the court will assume that Mr. Garcia's advice was indeed unsound to move on to the next prong. Withal, Torres-Estrada has shown no prejudice.

To show prejudice Torres-Estrada needed to prove two things: (1) that but for counsel's deficient performance there is a reasonable probability Torres-Estrada would have accepted the original plea offer, and (2) that the trial court would have accepted the guilty plea and sentenced him accordingly. See United States v. Rivera-Ruperto, 852 F.3d 1, 7-9 (1st Cir. 2017) (citing Lafler, 566 U.S. at 164, 132 S. Ct. at 1385, and Strickland, 466 U.S. at 688) (finding no ineffective assistance of counsel at the plea bargaining stage where Petitioner failed to show requisite prejudice, and specifically, that there was a reasonable probability that any plea deal (much less the allegedly favorable 12-year plea deal) would have been presented to the court but for counsel's purported ineffective assistance). As it pertains to the original offer, there is nothing in the record that shows that Petitioner would have accepted said offer. This is so because even "lead counsel" was advocating for a 14-year counter-offer. Moreover, even after listening to everything defense counsels had to say about

plea negotiation strategy, Torres-Estrada decided to authorize one for 13 years and 8 months. Therefore, it would be hard for this court to conclude that Torres-Estrada would have accepted the original offer if it were not for Mr. Garcia.

Even if Torres-Estrada had shown that he would have accepted the original offer in time, he has failed to show that the trial court would have accepted the 188-month sentencing recommendation without more. See Rivera-Rivera v. United States, 844 F.3d 367, 372-73 (1st Cir. 2016) (citing Frye, 132 S. Ct. at 1409) (explaining that to show prejudice in the plea negotiation context, petitioner "must adduce facts indicating a reasonable probability that the prosecution would not have withdrawn the plea offer and that the district court would have imposed a sentence in accordance with the terms of the offer."). And even if prejudice was shown, a dismissal of the indictment is not the only just remedy Torres-Estrada is entitled to, as the "trial court can…exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed." Lafler, 566 U.S. at 174, 132 S. Ct. at 1391. Because Torres-Estrada has not shown actual prejudice his motion to vacate on these grounds is denied.

### ***To sum up…***

Again, what Petitioner fails to comprehend—even after all of the years he has been relitigating the alleged internal discord created by attorney Garcia and the missed opportunity to accept a better plea offer—is that no sentencing recommendation made pursuant to any plea agreement would have been binding on the sentencing court. In this regard, Petitioner's arguments are wholly speculative.

On a related note, the extensive record of underlying criminal proceedings and the plea agreement signed by Petitioner demonstrate that his decision to enter a guilty plea was made knowingly and voluntarily, and not the product of any of his attorney's ineffective assistance or coercion. As the trial record shows, Petitioner indeed exercised his right to retain and be represented by the attorneys of his choice, and just as importantly, the court complied with its duty to inquire and probe into the purported conflicts or issues continually asserted by Torres-Estrada and his legal team through the criminal prosecution.[8] See United States v. Diaz-Rodriguez, 745 F.3d 586, 590 (discussing the trial court's duty to inquire into the reasons for a defendant's dissatisfaction with *appointed* counsel). Conversely, Petitioner has failed to point to any evidence to show that his guilty plea was invalid on any basis. In fact, he has not even requested to withdraw it.[9] Rather, Petitioner presses for dismissal of the charges against him. This the court cannot due.

At the end of the day, Torres-Estrada still has not shown that Mr. Garcia's or any of his other attorneys' performance "in advising his guilty plea fell below the standard of performance of reasonable proficient counsel, and second, that by such inadequate performance, [he] was induced to enter a guilty plea which he otherwise would not have entered." United States v. Dunfee, 821 F.3d 120, 128 (quotation marks omitted) (quoting Lopez-Nieves v. United States, 917 F.2d 645, 647 (1st Cir. 1990)) (further noting that "[w]here...the defendant was represented by multiple attorneys, an ineffective assistance challenge is particularly difficult to mount"). See United States v. Salamon, 220 F. Supp. 3d

---

[8] As the parties are well aware, per their own motions and due to the sensitive nature of some of the attorney-defendant and plea bargaining issues, portions of the trial record have remained under seal or their viewing restricted to selected parties and court users only.

[9] And he should know by now that, were the court to withdraw his guilty plea, he would still be up against the ropes.

202, 207–08 (D. Mass. 2016) (rejecting ineffective assistance of counsel claim upon finding that petitioner failed to establish that his sentence would have been any shorter if, despite counsel's advice, he had chosen to offer another plea or declined to plead guilty and proceeded to trial).

### IV. EVIDENTIARY HEARING

Torres-Estrada has requested an evidentiary hearing. See Docket No. 7 at 21. The United States, in turn, believes that such a hearing is not necessary. Evidentiary hearings in § 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. See Moreno–Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

In Torres-Estrada's case, even if the court deemed his petition as facially adequate, the fact of the matter is that the record belies his allegations. Having ruled that the Torres-Estrada's claims, including those regarding the alleged ineffective assistance of counsel, lack merit, the court finds that a hearing is not warranted. Accordingly, Petitioner's request is **DENIED.**

## V.  CONCLUSION

For the reasons previously explained, the court finds that Torres-Estrada's claims lack merit. Accordingly, his request for habeas relief under 28 U.S.C. § 2255 (Dockets No. 7 and No. 9) is **DENIED**. The case is, therefore, **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

## VI.  CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 26, 2019.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
